Jonathan Shub (CA Bar # 237708)
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street
Suite 2100
Philadelphia, PA 19107
Ph: (215) 238-1700
Email: jshub@kohnswift.com

*Attorneys for Plaintiffs and the Proposed Class*
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY CHOO and DIANNE E. LEE, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>WELLNX LIFE SCIENCES, INC. and PLATINUM US DISTRIBUTION, INC. d/b/a WELLNX LIFE SCIENCES, USA,<br><br>                    Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Misty Choo and Dianne E. Lee ("Plaintiffs"), by and through their undersigned counsel, bring this action on their own behalf and on behalf of a Class of persons and entities defined herein against Defendant, Wellnx Life Sciences, Inc. and Defendant, Platinum US Distribution, Inc. d/b/a Wellnx Life Sciences, USA

1

(collectively, "Defendants" or "Wellnx"), and, for their Complaint, alleges upon information and belief and based on the investigation to date of their counsel, as follows:

**INTRODUCTION**

1.    This is a class action brought individually by Plaintiffs Misty Choo and Dianne E. Lee, on behalf of themselves and a class of persons similarly situated (the "Class" or "Classes" or "Class Members"), who purchased the weight-loss dietary supplement Nature's Science "100% Pure Garcinia Cambogia" ("Product"). Plaintiffs allege that Defendants' efficacy claims for the Product are false and misleading and that Defendants do not provide the represented amount of the active ingredient, hydroxycitric acid ("HCA"), in the Product.

2.    Sales of retail diet pills, combined with meal replacements, are in the billions of dollars in the United States on an annual basis.

3.    Defendants advertise, manufacture, market, sell and distribute the Product that is sold in the growing and extremely competitive diet/weight-loss dietary supplement industry as "made with 100% pure natural ingredients" that unlike competitors' products "is made with premium garcinia cambogia that supplies 60% HCA, which is the active weight loss component of garcinia cambogia" and claim that their Product has "5 times MORE Garcinia Cambogia that the competitor" (but it lists no "competitor" on their label).

4.    Defendants claim their Product is an effective weight-loss dietary supplement and encourage consumers to "Start Losing Weight Today!"  Although Defendants boast about the Product's efficacy on their labeling and in their advertising, none of the promised benefits is or can be delivered by the Product.



5.    To make matters worse, Defendants only provide approximately 26% of the amount of HCA claimed on the Product label.

6.    In late 2012, Dr. Mehmet Oz ("Dr. Oz.") of the highly popular TV show, "The Dr. Oz Show," claimed on his website that Garcinia Cambogia was the "Newest, Fastest Fat-Buster" and declared on his TV show, "Thanks to brand new scientific research, I can tell you about a revolutionary fat buster" with the words "No Exercise. No Diet. No Effort" on the screen behind him.

7.     In June 2014, Dr. Oz's representations regarding weight-loss products, including Garcinia Cambogia, were called into question by the United States Senate's Subcommittee on Consumer Protection, Product Safety, and Insurance, where Dr. Oz was called to testify.

8.     When presented with studies refuting the efficacy of Garcinia Cambogia, Dr. Oz testified that he could not be held responsible for what companies say about their products, and that he has toned down some of his language and will publish a list of products he believes can actually help people lose weight.

9.     With all the hype surrounding this new "miracle" diet pill, many dietary supplement manufacturers, including Defendants, decided to exploit this opportunity to make money off the unassuming consumer, regardless of the science refuting their claims regarding the Product.

10.     As a result of Defendants' unfair, deceptive, fraudulent, and misleading practices, Plaintiffs and Class Members did not receive the benefit of their bargain because they were deceived into purchasing the Product which they would not otherwise have purchased, or would have purchased at a substantially lower price than that charged by Defendants.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action in which there are in excess of 100 class members, several of whom are citizens of a state different from Defendants.

12.     This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in California, including this District.  Defendants marketed, promoted, distributed, and sold the Product in California, and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing of the Product within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events giving rise to California Plaintiff Misty Choo's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

14.     This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and many Members of the proposed Class are citizens of states different from that of the Defendants.

15.     **Intradistrict Assignment (L.R. 3-2(b)):**  This action arises in Butte County, a county encompassed in this District, in that a substantial part of the events which give rise to the claims asserted herein occurred in Butte County, and Defendants conduct business in Butte County.

## PARTIES

16.     Plaintiff Misty Choo is a resident and citizen of Chico, Butte County, California.

17.     Plaintiff Dianne Lee is a resident and citizen of Charlotte, Mecklenburg County, North Carolina.

18.     Defendant Wellnx Life Sciences, Inc. is a Canadian corporation with a principal place of business located at 6335 Edwards Blvd., Mississauga, Ontario, Canada L5T2W7.

19.     Defendant Platinum US Distribution, Inc. d/b/a Wellnx Life Sciences, USA is a Delaware corporation with a principal place of business at 874 Walker Rd., Ste. Wellnx Life Sciences, USA manufactures, advertises, markets, distributes, and/or sells Garcinia Cambogia to thousands of consumers in California and throughout the United States.

# FACTUAL ALLEGATIONS

20.    Plaintiff Misty Choo, a resident and citizen of Chico, Butte County, California, purchased the Nature's Science 100% Garcinia Cambogia Product in or around 2015 from Ebay.com, and paid approximately $19.99 for the Product.  Prior to purchasing the Product, she read and relied on the advertising claims made by Defendants as described herein, and purchased the Product under the belief that it would help her lose weight as advertised.  After ingesting this supplement as directed, she questioned whether it contained the active ingredients as advertised, and whether those ingredients, in fact, would help her lose weight.  She, like other reasonable consumers, was deceived by the Product's false claims.  She did not receive the benefit of her bargain when she purchased the Product based upon false and unsupported claims made by Wellnx, selling the Product under the Nature's Science label.  She was economically injured when she purchased the Product based upon Defendants' fraudulent misrepresentations regarding the value and efficacy of the Product, as listed on the Product's label and in Defendants' advertising.  She would not have purchased the Product or would have paid less for it had its characteristics and efficacy been truthfully advertised.

21.    Plaintiff Dianne Lee is a resident and citizen of Charlotte, Mecklenburg County, North Carolina.  Ms. Lee purchased two bottles of the Nature's Science 100% Garcinia Cambogia Product between July 2016 and February 2017 from Wal-Mart Supercenter, 3850 E Independence Blvd., Charlotte, NC 28205, and paid approximately

7

$19.99 for the Products.  Prior to purchasing the Product, she read and relied on the advertising claims made by Defendants as described herein, and purchased the Product under the belief that it would help her lose weight.  After ingesting this supplement as directed, without success, she did not believe that it contained the active ingredients as advertised, or that it would help her lose weight.  She did not receive the benefit of her bargain when she purchased the Product based upon false and unsupported claims shown on the Nature's Science 100% Garcinia Cambogia label.  She, like other reasonable consumers, was deceived by the Product's false claims.  She was economically injured when she purchased the Product based upon Defendants' fraudulent misrepresentations regarding the value and efficacy of the Product, as listed on the Product's label and in Defendants' advertising.  She would not have purchased the Product or would have paid less for it had its characteristics and efficacy been truthfully advertised.

22.    Defendants manufacture, distribute, market, and sell over-the-counter weight loss products, including "Nature's Science 100% Pure Garcinia Cambogia" ("Product").

23.    Defendants unapologetically boast about the efficacy of Garcinia Cambogia – the main active ingredient in the Product – despite the overwhelming scientific literature refuting the fat burning, weight loss, and appetite suppression claims.

24.    Under information and belief, Defendants had access to, but knowingly and/or recklessly ignored all competent and reliable scientific evidence regarding the main active ingredient in the Product, Garcinia Cambogia - HCA.

25.    Defendants made false claims regarding the efficacy of the Product in providing weight loss, weight management, and inhibiting fat production.

26.    Defendants also knowingly and/or recklessly under-dosed the Product's allegedly active ingredient, HCA.

27.    Defendants state the following false/misleading claims on the Product's label and on the Product's website advertising at http://www.naturessciencesupplements.com, as shown below:

   a.  "100% Pure Garcinia Cambogia";

   b.  "Effective Weight Loss!";

   c.  "[M]ade with premium garcinia cambogia that supplies 60% HCA, which is the active weight-loss component of garcinia cambogia";

   d.  "[S]cientifically formulated to deliver the exact clinically tested dose of 4667mg of garcinia cambogia per day that is needed to see results!";

   e.  "The Best of Nature and Science, New Nature's Science is a line of natural, high quality, weight-loss supplements that are scientifically formulated for better efficacy!"; and

   f.  "Nature's Science products are made with pure natural ingredients. Unlike other products, Nature's Science product are made with premium natural ingredients for effective results."



*Choo et al. v. Wellnx Life Sciences, Inc. et al.*
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



28.    All of the labeling and marketing claims of Defendants regarding the Product are predicated on HCA, the active ingredient in the herbal compound Garcinia Cambogia, to inhibit the extramitochondrial enzyme, adenosine triphosphate (ATP)-citrate-lyase.

### Defendants' Labeling and Marketing Claims are False and/or Misleading Regarding Garcinia Cambogia

29.    After HCA was reported to promote weight loss, in part, through suppression of hunger, a study was conducted to determine the effects of HCA on appetitive variables.  In the study, the active treatment group did not exhibit better dietary compliance or significant correlations between appetitive variables and energy intake or weight change.  The study did not support a satiety effect of HCA.[1]

30.    The study revealed that a two-week supplementation with HCA alone, or in combination with medium chain triglycerides, did not result in increased satiety compared to a placebo, in subjects losing bodyweight.[2]

---

[1]  Mattes R, Bormann L. Effects of (-)-hydroxycitric acid on appetitive variables. Physiol Behav 2000, 71:87-94.

[2]  Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. Int J Obes Relat Metab Disord 2001a, 25:1087-94.

31.    A similar study was performed in order to assess the effects of two weeks of supplementation with HCA alone, or combined with medium-chain triglycerides, on satiety and energy intake.  Two weeks of supplementation with HCA alone or combined with medium chain triglycerides did not result in increased satiety or decreased energy intake compared to placebo in subjects losing bodyweight.[3]

### No Efficacy for Increased Metabolism, Fat Burning or Weight Loss

32.    As Garcinia Cambogia (HCA) is considered to be a potential anti-obesity agent, a randomized controlled trial was conducted to evaluate the efficacy of Garcinia Cambogia for body weight and fat mass loss in overweight human subjects.  Garcinia Cambogia failed to produce weight loss and fat mass loss beyond that observed with a placebo.[4]

33.    A study was performed with the objective of determining the effect of HCA on marker substrates of altered metabolism, as well as on respiratory quotient ("RQ") and energy expenditure ("EE") in humans, following an overnight fast and during a bout of exercise. The hypothesis was that supplementation with HCA would result in an increase in fat oxidation and metabolic rate, reflected by an increase in beta-hydroxybutyrate and EE and/or a decrease in RQ.  In a fasted state and following three days of HCA treatment,

---

[3] Kovacs E, Westerterp-Plantenga M, de Vries M, Brouns F, Saris W. Effects of 2-week ingestion of (-)hydroxycitrate and (-)-hydroxycitrate combined with medium-chain triglycerides on satiety and food intake. Physiol Behav 2001b, 74:543-9.

[4] Heymsfield S, Allison D, Basselli J, Pietrobelli A, Greenfield D, Nunez C. Garcinia cambogia (Hydroxycitric Acid) as a potential antiobestiy agent. J Am Med Assoc 1998, 280: 1596-1600.

RQ was not significantly lowered during rest or during exercise when compared with the placebo treatment.  Treatment with HCA did not affect EE, either during rest or during moderately intense exercise.  Furthermore, the blood substrates measured were not significantly different between treatment groups under the fasting conditions of this study.  The results did not support the hypothesis that HCA alters the short-term rate of fat oxidation in the fasting state during rest or moderate exercise.[5]

34.    A study determined the effects of 2-week ingestion of HCA alone or combined with medium-chain triglycerides on fat oxidation, energy expenditure and body weight.  Two-week supplementation with HCA alone or in combination with medium chain triglycerides did not result in increased fat oxidation, 24 h EE or bodyweight loss compared to a placebo, in subjects losing bodyweight.[6]

35.    An additional study was conducted to assess the effects of acute HCA supplementation on substrate metabolism at rest and during exercise in humans.  The study found that HCA, even when provided in large quantities, does not increase total fat oxidation in vivo in endurance-trained humans.[7]

---

[5] Kriketos A, Thompson H, Greene H, Hill J. (-)-Hydroxycitric acid does not affect energy expenditure and substrate oxidation in adult males in a post-absorptive state. Int J Obes Relat Metab Disord 1999, 23:867-73.

[6] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. Int J Obes Relat Metab Disord 2001a, 25:1087-94.

[7] van Loon L, van Rooijen J, Niesen B, Verhagen H, Saris W, Wagenmakers A. Effects of acute (-)hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans. Am J Clin Nutr 2000, 72:1445-50.

36.     All of Defendants' claims regarding the Product and its ability to help with appetite control, fat burning, and weight loss are false and/or misleading based upon the scientific literature and the dose of HCA contained in the Product.

**Defendants' Mislabeling of the Product by
Under-Dosing the Main "Active Ingredient," HCA**

37.     Defendants claim that each 4 caplet serving of the Product contains 1556 mg of Garcinia Cambogia Extract, with 60% concentration of HCA (or 933.6 mg of HCA):



38.     However, according to lab results that were commissioned by Plaintiffs'

attorneys, the Product only contains roughly 26% of the claimed HCA, *i.e.* 243 mg per

serving, as shown in Table 1 below.

| Table 1 – Results CDXA-17-007322 | | | | |
|---|---|---|---|---|
| Analyte | Units | Spec. | Result | Reporting Limit |
| Hydroxycitric Acid Lactone | mg/serving | NA | ND | 6.7 |
| Hydroxycitric Acid* | mg/serving | NA | 243 | -- |
| Total Hydroxycitric Acid | mg/serving | 933.6 | 243 | |

Serving size: 1,556 mg
Average caplet weight: 826 mg

*A molecular conversion factor of 0.7847 was used to convert HCA Calcium Salt to HCA (free)

39.     This clear mislabeling of the Product renders it misbranded.

40.     Plaintiffs and Class Members were, in fact, misled by Defendants'

representations regarding the true nature of the Product ingredients, efficacy, and value.

41.     The difference between the Product promised and the Product sold is

significant.

42.     The efficacy—or lack thereof—of the Product has real impacts on the

benefits provided to consumers by the Product and the actual value of the Product itself.

43.     Defendants' deceptive statements violate the Food, Drug, and Cosmetic Act

("FDCA"), 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements)

misbranded when the label contains a statement that is "false or misleading in any

particular."

44.     Defendants' conduct is also deceptive and unfair in that it violates the prohibition against false or misleading labeling under California's Sherman Laws, which adopt the federal labeling regulations as the food labeling requirements of the state. Cal. Health & Safety Code § 110100.

45.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and the parallel state statute cited in this Class Action Complaint.

46.     Plaintiffs and Class Members would not have purchased the Product or would have paid less for the Product if they were aware of the misleading labeling of the Product by Defendants.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

48.     Plaintiffs seek to represent a Nationwide Class defined as follows:

**National Class:  All persons in the United States who purchased Defendants' Product.**

49.     In the alternative, Plaintiffs bring this action on behalf of the following State Classes:

a.  Plaintiff Choo brings this action on behalf of the following:

**California State Class: All persons in the State of California who purchased Defendants' Product.**

b.  Plaintiff Lee brings this action on behalf of the following:

**North Carolina Class: All persons residing in the State of North Carolina who purchased Defendants' Product.**

50.    Excluded from the Classes are: Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; all governmental entities; and the Judge to whom this case is assigned.

51.    Certification of the Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52.    Numerosity – Federal Rule of Civil Procedure 23(a)(1).  The Members of the Classes are so numerous that individual joinder of all Class Members in impracticable. On information and belief, there are thousands of consumers who have been affected by the Defendants' wrongful conduct.  The precise number of the Class Members and their addresses is presently unknown to Plaintiffs, but may be ascertained from the Defendants' books and records.

53.    Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

54.    <u>Commonality and Predominance</u> – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).  This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a.    Whether the Product, when used by consumers in a normal and customary manner and/or in accordance with Defendants' suggested use, works as advertised, marketed, and conveyed to consumers;

b.    Whether, in the course of business, Defendants represented that the Product has characteristics, uses, benefits, or qualities that it does not have when used by consumers in a normal and customary manner and/or in accordance with Defendants' suggested use;

c.    Whether the claims Defendants made and are making regarding the Product are unfair or deceptive; specifically, whether the Product provides fat burning, weight loss and/or appetite suppression properties to the consumer.

d.    Whether Defendants knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Product that Defendants were claiming they would receive;

e.    Whether Defendants knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

f.  Whether Defendants knew or should have known that the representations and advertisements regarding the Product were unsubstantiated, false, and misleading;

g.  Whether Defendants have breached express and implied warranties in the sale and marketing of the Product;

h.  Whether Defendants' conduct violates public policy;

i.  Whether Defendants' acts and omissions violated the consumer fraud acts;

j.  Whether Defendants have been unjustly enriched by the sale of the Product to the Plaintiffs and the Class Members;

k.  Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Product;

l.  Whether the Plaintiffs and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

m. Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

55.  <u>Typicality</u> – Federal Rule of Civil Procedure 23(a)(3).  Plaintiffs' claims are typical of the other Class Members' claims because, among other things, all Class Members were similarly injured through the uniform and common misconduct described above.

56.  <u>Adequacy of Representation</u> – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class Members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

57.  <u>Declaratory and Injunctive Relief</u> – Federal Rule of Civil Procedure 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.

58.  <u>Superiority</u> – Federal Rule of Civil Procedure 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress from Defendants' wrongful conduct.  Even if Class Members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By

contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION
## COUNT I

### California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")
### (On Behalf of the California Class)

59.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

60.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

61.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants as alleged herein constitute business acts and practices.

62.     <u>Unlawful</u>:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.  The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq*.;

b.  The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.;

c.  The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*.; and

d.  The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*.

63.    <u>Unfair</u>: Defendants' conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

64.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

65.    Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

66.    <u>Fraudulent</u>:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

67.    As set forth herein, Defendants' claims relating to 100% Pure Garcinia Cambogia are likely to mislead reasonable consumers to believe the product can provide weight-loss benefits, when they cannot.

68.     Defendants profited from their sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

69.     Plaintiff and Class Members are likely to continue to be damaged by Defendants' deceptive trade practices, because Defendants continue to disseminate misleading information on the Products' packaging.  Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

70.     Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendants' unlawful conduct.

71.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

72.     Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

## COUNT II

### California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of the California Class)

73.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

74.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

75.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  *Id*.

76.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendants relating to the Products misled consumers acting reasonably as to the effectiveness and weight-loss properties of the Product.

77.    Plaintiff suffered injury in fact as a result of Defendants' actions as set forth herein because she purchased the Product in reliance on Defendants' false and misleading labeling claims that the Product, among other things, provides weight-loss benefits and the amount of HCA in the Product.

78.    Defendants' business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendants have advertised the Product in a manner that is untrue and misleading, which Defendants knew or reasonably should have known, and omitted material information from its advertising.

79.    Defendants profited from their sale of the falsely and deceptively advertised Products to unwary consumers.

80.    As a result, Plaintiff, the California Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

81.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the California Class, seeks an order enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT III

### California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of the California Class)

82.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

83.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

84.    Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for

personal, family, or household purposes by Plaintiff and Class Members, and violated

and continue to violate the following sections of the CLRA:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they

do not have;

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if

they are of another;

§ 1770(a)(9): advertising goods with intent not to sell them as advertised; and

§ 1770(a)(16): representing the subject of a transaction has been supplied in

accordance with a previous representation when it has not.

85.    Defendants profited from the sale of the falsely, deceptively, and unlawfully

advertised Products to unwary consumers.

86.    Defendants' wrongful business practices constituted, and constitute, a

continuing course of conduct in violation of the CLRA.

87.    As a result, Plaintiff and the Class have suffered harm, and therefore seek (a)

actual damages in the amount of the total retail sales price of the Products sold to all

Class Members, (b) punitive damages in an amount sufficient to deter and punish, (c)

injunctive relief in the form of modified advertising and a corrective advertising plan, and

(d) restitution.

88.    Pursuant to California Civil Code § 1782, Plaintiff notified Defendants in

writing by certified mail, return receipt requested, of her claims, and of the particular

violations of § 1770 of the CLRA, but Defendants failed to remedy the violations within 30 days.

## COUNT IV

**Breach of Express Warranties**
**Cal. Com. Code § 2313(1)**
**(On Behalf of the California Class)**

89.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

90.    Through the Product's labels and advertising, Defendants made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements.  Cal. Com. Code § 2313(1).

91.    Defendants breached the express warranties by selling Products that do not and cannot provide the promised benefits.

92.    Plaintiff and the Class Members would not have purchased the Product had they known the true nature of the Product's ingredients and what the Product contained.

93.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for the Products.

94.    Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

95.    As a result of Defendants' breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

## COUNT V

**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code § 2314**
**(On Behalf of the California Class)**

96.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

97.    Defendants, through their acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, made representations to Plaintiff and the Class that, among other things, the Products will aid weight loss.

98.    Plaintiff and the Class bought the Products manufactured, advertised, and sold by Defendants, as described herein.

99.    Defendants are merchants with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

100.    However, Defendants breached that implied warranty in that the Product provides no weight-loss benefits, as set forth in detail herein.

101.    As an actual and proximate result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in

that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose, causing weight loss.

102.    Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase prices.

## COUNT VI

### Breach of Express Warranty
### (N.C. Gen. Stat. § 25-2-313)
### (On Behalf of the North Carolina Class)

103.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

104.    As express warrantors, manufacturers and merchants, Defendants had certain obligations under N.C. Gen. Stat. § 25-2-313 to conform the Product to the express warranties.

105.    Plaintiff, and each Member of the North Carolina Class formed a contract with Defendants at the time Plaintiff and the other Class Members purchased the Product. The terms of the contract include the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above.  This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the Members of the North Carolina Class and Defendants.

106.    Defendants purport through their advertising, labeling, marketing and packaging to create an express warranty that the Product was effective at providing weight loss and appetite suppression.

107.    Plaintiff and the North Carolina Class performed all conditions precedent to Defendants' liability under this contract when they purchased the Product.

108.    Defendants breached express warranties about the Product and its qualities because Defendants' statements about the Product were false and the Product does not conform to Defendants' affirmations and promises described above.  Plaintiff and the North Carolina Class Members would not have purchased the Product had they known the true nature of the Product's ingredients and what the Product contained.

109.    Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

110.    As a result of Defendants' breach of warranty, Plaintiff and North Carolina Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

## COUNT VII

### Breach of the Implied Warranty of Merchantability
### (N.C. Gen. Stat. § 25-2-314)
### (On Behalf of the North Carolina Class)

111.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

112.    Defendants are and were at all relevant times merchants with respect to the Product.

113.    A warranty that the Product was in merchantable quality and condition is implied by law pursuant to N.C. Gen. Stat. § 25-2-314.

114.    Defendants impliedly warranted that the Product was of good and merchantable condition and quality – fit for the ordinary purposes for which such goods are sold and that the Product conforms to the promises and affirmations of fact made on the label and in its product literature.

115.    Defendants knew and intended that the North Carolina Class Members would be the ultimate consumers of the Product.

116.    Defendants sold the Product into the stream of commerce, and Defendants are merchants with respect to goods such as the Product at issue.

117.    The Product was not merchantable at the time of sale, because it did not—nor could not—have any impact related to the representations as alleged herein.

118.   The Plaintiff and North Carolina Class Members did not receive the benefit of their bargain in purchasing the Product.

119.   Because of Defendants' breach of the implied warranty, the Plaintiff and North Carolina Class Members were injured.

120.   Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

121.   As a result of Defendants' breach, Plaintiff and North Carolina Class Members have sustained damages.

## COUNT VIII

### Unjust Enrichment
### (On Behalf of the Nationwide Class or,
### Alternatively, the North Carolina Class)

122.   Plaintiff Lee incorporates the allegations set forth above as if fully set forth herein.

123.   Through their numerous misleading, unfair and deceptive claims and misrepresentations, Defendants made millions of dollars from the sale of the Product. The considerable profits were made at the expense of Plaintiff and each Member of the Class, who relied upon Defendants' material representations and omissions.

124.    'Plaintiff and Class Members conferred benefits on Defendants by purchasing the Product for more than it was worth as a result of Defendants' unlawful conduct.

125.    Defendants knowingly appreciated and accepted Plaintiff and Class Members payment for the Product that they knowingly and unlawfully advertised to have characteristics and ingredients that the Product did not have.

126.    Defendants should not be permitted unjustly to enrich itself at the expense of Plaintiff and Class Members.

127.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchase of the Product.  Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiff and Class Members because they would have not purchased the Product if the true facts had been known.

128.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members for Defendants' unjust enrichment, as ordered by the Court.

## COUNT IX

### Declaratory Relief Under the Declaratory Judgment Act (On Behalf of the Nationwide Class or, Alternatively, the California and North Carolina Classes)

129.   Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

130.   Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

131.   Pursuant to 28 U.S.C. § 2201, et seq., there is an actual controversy between Defendants and Plaintiff concerning whether:

a.    Defendants have misrepresented the effectiveness of the Product; and

b.    Defendants knew or should have known of the misrepresentations regarding the efficacy of the Product.

132.   Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

133.   Despite the studies which have proven Defendants' representations false, Defendants continue to represent the effectiveness of the Product, and have otherwise failed to correct those misrepresentations.

134.   Accordingly, based on Defendants' repeated and continued misrepresentations, Plaintiffs seek a declaration that Defendants have misrepresented the efficacy of the Product and that its actions are unlawful.

135.   The declaratory relief requested herein will generate common answers that will settle the controversy related to the misrepresented labeling of the Product.  There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs on behalf of themselves and all others similarly situated, respectfully request that the Court enter an Order awarding the following relief:

A. Declaring that this action may be maintained as a class action, certifying the Classes as requested herein, appointing Plaintiffs as the Class Representatives, and appointing the undersigned as Class Counsel;

B. Enjoining Defendants from the unlawful practices and statutory violations asserted herein;

C. Declaring Defendants' practices to be unlawful;

D. Entering a judgment awarding Plaintiffs and each of the other Members of the Classes their actual damages in an amount according to proof as to Defendants' unlawful conduct, as alleged herein;

E.  Entering a judgment awarding Plaintiffs and each of the other Members of the Classes compensatory, consequential, and special damages in amounts to be proven at trial, as well as statutory damages;

F.  Granting an award of punitive damages, to the maximum extent permitted by law;

G.  Entering a judgment awarding Plaintiffs and the other members of the Classes restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Defendants as a result of their wrongful conduct, as alleged herein;

H.  Awarding attorneys' fees, expenses, and the costs of this action to the maximum extent permitted by law;

I.  An award of pre- and post-judgment interest; and

J.  All other and further relief that the Court deems necessary, just, and proper.

//

//

//

//

//

//

//

*Choo et al. v. Wellnx Life Sciences, Inc. et al.*
CLASS ACTION COMPLAINT

## **JURY DEMAND**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs hereby demand a

trial by jury of all claims in this Class Action Complaint so triable.


Dated:  November 30, 2017                    Respectfully submitted,


                                     By:    */s/ Jonathan Shub*
                                            Jonathan Shub (CA Bar # 237708)
                                            Kevin Laukaitis (*Pro Hac Vice Application
                                            Forthcoming*)
                                            **KOHN, SWIFT & GRAF, P.C.**
                                            One South Broad Street
                                            Suite 2100
                                            Philadelphia, PA 19107
                                            Ph: (215) 238-1700
                                            Email: jshub@kohnswift.com
                                                      Klaukaitis@kohnswift.com

                                            Nick Suciu III (*Pro Hac Vice Application
                                            Forthcoming*)
                                            **BARBAT, MANSOUR & SUCIU
                                            PLLC**
                                            1644 Bracken Rd.
                                            Bloomfield Hills, MI 48302
                                            Telephone: (313) 303-3472
                                            Facsimile: (248) 698-8634
                                            Email: nicksuciu@bmslawyers.com

                                                        and

*Choo et al. v. Wellnx Life Sciences, Inc. et al.*
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gregory F. Coleman (*Pro Hac Vice Application Forthcoming*)
Lisa A. White (*Pro Hac Vice Application Forthcoming*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

*Attorneys for Plaintiffs and the Proposed Class*